THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHERWOOD GLENN FOSTER     :
1120 W. Church Street        :
Newark, Ohio 43055        :
                :
                :
   Plaintiff,         : CASE NO. 2:17-cv-1054
                :
   v.              : JUDGE
                :
                : MAGISTRATE JUDGE
COUGHLIN AUTO GROUP      :
c/o Agent, Albert Couglin Sr.     :
1850 North 21st Street        : **Jury Demand Endorsed Herein**
Newark, Ohio 43055        :
                :
                :
   Defendant.        :

## COMPLAINT

NOW COMES Plaintiff Sherwood Glenn Foster ("Plaintiff") and proffers this Complaint for damages against Defendant Coughlin Auto Group ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*., and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. Chapter 4111 and Ohio common law.

2. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

3. Venue is proper pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio, Plaintiff performed his job duties there, and Defendant is doing and has done substantial business in the Southern District of Ohio.

4. Plaintiff was an "employee" as defined in Chapter 4111 of the Ohio Revised Code, and the Fair Labor Standards Act.

5. Defendant is an "employer" as defined in Chapter 4111 of the Ohio Revised Code, and the Fair Labor Standards Act.

## THE PARTIES

6. Plaintiff is a natural person residing in Licking County, Ohio.

7. Upon information and belief, Defendant Coughlin Auto Group is an Ohio corporation registered to do business in Ohio.

8. Defendant conducts business in the Southern District of Ohio and employed Plaintiff in the Southern District of Ohio.

## FACTUAL BACKGROUND

9. Plaintiff began working for Defendant in or around March of 2007.

10. At the time of his termination, Plaintiff was employed as a Finance Manager.

11. Defendant is in the automobile sales business and operates several dealerships throughout the state of Ohio.

12. Plaintiff worked in Defendant's Newark, Ohio dealership. As a Finance Manager, Plaintiff is paid by a combination of "draw" checks and commissions.

13. Throughout the entirety of his employment with Defendant, Plaintiff has never been written up or disciplined.

14. On or about November 1, 2017, Plaintiff received his commission calculation for the month of October. He noticed that approximately $352.00 had been deducted from his check without his consent.

15. Plaintiff inquired as to why this money was being deducted from his paycheck and was told it involved an alleged mistake Plaintiff had made in 2012.

16. Plaintiff was informed the situation involved a car that was sold by Coughlin that was eventually repossessed. Allegedly, the car did not have aluminum wheels so some kind of penalty was assessed against Coughlin Automotive.

17. Plaintiff was minimally involved in the sale of this vehicle back in 2012 but believes he made approximately $100.00 on the sale generally.

18. Plaintiff didn't understand why money was being deducted from his check for this mistake without his consent. Plaintiff also did not understand why he was being charged double the amount that he actually made on the sale either.

19. Because of his confusion, Plaintiff approached the Sales Manager and General Manager, Brent Harbold and asked him about it.

20. Plaintiff told Mr. Harbold that he didn't understand why this money was being deducted from his check and said he didn't believe Defendant could legally deduct this money.

21. Plaintiff told Mr. Harbold that he wanted to have an attorney look into this issue.

22. Immediately, Mr. Harbold asked Plaintiff to come to his office.

23. While Plaintiff was in his office, Mr. Harbold called Kevin Cramer, one of Defendant's Human Resources representatives. Plaintiff could hear what Mr. Harbold was saying to Mr. Cramer but could not hear what Mr. Cramer was saying in response to Mr. Harbold.

24. Mr. Harbold told Mr. Cramer that Plaintiff was in his office and that he disagreed with the deduction from his commission check. Mr. Harbold also told Mr. Cramer that Plaintiff said he was going to have an attorney look into it.

25. Mr. Harbold remained on the phone, seemingly listening to what Mr. Cramer was telling him. He said "yes" a few times and hung up the phone.

26. Mr. Harbold then told Plaintiff that the deduction was not going to come out of his commission check but informed him that he was terminated, effective immediately.

27. Later, Plaintiff received a termination letter from Defendant that said his department was going in a different direction.

28. Plaintiff had never been disciplined while employed by Defendant, nor was he ever spoken to about his performance. In fact, Plaintiff was a highly successful performer throughout his employment with Defendant.

29. The reasons for Plaintiff's termination are clearly retaliatory and pretextual.

## COUNT I
### Retaliation- FLSA

30. All of the preceding paragraphs are realleged as if fully rewritten herein.

31. This claim is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

32. Plaintiff engaged in a protected activity when he informed Defendant he believed the deduction taken from his paycheck was unlawful and unwarranted.

33. Defendant knew that Plaintiff engaged in such protected activity.

34. Immediately after Plaintiff engaged in such protected activity, Defendant terminated Plaintiff.

35. Because Plaintiff engaged in the aforementioned protected activity, Defendant took an adverse employment action by terminating Plaintiff's employment and denying him the salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

36. As a direct and proximate result of Defendant's willful and intentional conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. Accordingly, Plaintiff seeks liquidated damages, punitive damages, interest and attorneys' fees, and all other remedies available, as a result of Defendant's retaliation in violation of 29 U.S.C. §215.

## COUNT II
## FLSA – Unlawful Deductions

37. All of the preceding paragraphs are realleged as if fully rewritten herein.

38. This claim is brought pursuant to the FLSA, 29 CFR 778 *et. seq.*

39. Defendant unlawfully deducted approximately $352.00 from Plaintiff's commissions.

40. Defendant violated the FLSA with respect to Plaintiff by taking improper deductions from Plaintiff's paycheck.

41. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages not presently ascertainable. In addition,

Plaintiff seeks liquidated damages, interest and attorneys' fees, costs, and all other remedies available, as result of Defendant's wrongful deduction from Plaintiff's pay.

## COUNT III
### O.R.C. § 4101:9-4-07 – Unlawful Deductions

42. All of the preceding paragraphs are realleged as if fully rewritten herein.

43. This claim is brought pursuant to Ohio Revised Code Section 4101:9-4-07.

44. Defendant unlawfully deducted approximately $352.00. from Plaintiff's paycheck.

45. Defendant violated the O.R.C. with respect to Plaintiff by taking improper deductions from Plaintiff's paycheck.

46. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages not presently ascertainable.  In addition, Plaintiff seeks liquidated damages, interest and attorneys' fees, costs, and all other remedies available, as result of Defendant's wrongful deduction from Plaintiff's pay.

## COUNT IV
### FLSA – Retaliation for Opposing Pay Practices and Unlawful Deductions

47. Paragraphs above are incorporated as if fully rewritten herein.

48. This claim is brought pursuant to the FLSA, 29 U.S.C. §201, *et seq*.

49. Plaintiff was an employee of Defendant.

50. Defendant attempted to deduct $352.00 from Plaintiff's paycheck without obtaining consent from him to do so.

51. Plaintiff informed Defendant that he believed the deduction was unlawful and said he was going to have an attorney look into the issue.

52. Plaintiff opposed the unlawful deduction from his pay.

53. Defendant terminated Plaintiff immediately after he complained that he believed the deduction from his paycheck was unlawful and told Defendant he was going to have an attorney look into the issue.

54. Plaintiff reasonably believed the deduction was improper and unlawful.

55. As a result of Plaintiff's opposition, Defendant terminated Plaintiff.

56. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. In addition, Plaintiff seeks liquidated damages, interest and attorneys' fees, and all other remedies available, as result of Defendant's willful failure and refusal to pay minimum wage.

## COUNT V
### OMFWSA, R.C. §4111.13 - Retaliation for Opposing Pay Practices and Unlawful Deductions

57. Paragraphs above are incorporated as if fully rewritten herein.

58. This claim is brought pursuant to the Ohio Minimum Fair Wage Standards Act.

59. Plaintiff opposed unlawful and improper deductions.

60. Defendant retaliated against Plaintiff by terminating his employment immediately after his complaints.

61. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. In addition, Plaintiff seeks liquidated damages, interest and attorneys' fees, and all other

remedies available, as result of Defendant's willful failure and refusal to pay minimum wage.

## COUNT VI
### Wrongful Discharge in Violation of Public Policy

62. All of the preceding paragraphs are realleged as if fully rewritten herein.

63. Plaintiff informed Defendant that he was going to have an attorney look into the issue of unlawful deductions from his paycheck.

64. Immediately after this conversation occurred, Defendant terminated Plaintiff's employment.

65. Defendant retaliated against Plaintiff for saying he was going to retain the services of an attorney.

66. Accordingly, Defendant has violated a clear public policy with regard to Plaintiff's termination.

67. The act of firing an employee for consulting an attorney serves as the basis for a public policy exception to the employment-at-will doctrine.  (See *Simonelli v. Anderson Concrete Co.*, 99 Ohio App. 3d 254, 650 N.E.2d 488 (1994), *Daniels v. Fraternal Order of Eagles Aerie of Tecumseh #979*, 2005-Ohio-3657, 162 Ohio App. 3d 446, 833 N.E.2d 1253).

68. Defendant's termination of Plaintiff violates public policy and is therefore unlawful.

69. Plaintiff has suffered injury as a result of his termination by Defendants.

70. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Rachel A. Sabo, Esq.*

Rachel A. Sabo (0089226)
Peter G. Friedmann (0089293)
(Rachel@TheFriedmannFirm.com)
**The Friedmann Firm LLC**
1457 S. High Street
Columbus, Ohio 43207
(614) 610-9757: Phone
(614) 737-9812: Fax


## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Rachel A. Sabo*

Rachel A. Sabo (0089226)